### CONES, et v LINDENBERG

Ohio Appeals, 2nd Dist, Franklin Co

No 2923. Decided March 23, 1939

# 658

Hugh Huntington and Angus Holmes, Columbus, for plaintiffs-appellees.

S. L. Black and W. H. Jones, Columbus, for defendant-appellant.

## OPINION

By BARNES, J.

The above-entitled cause is now being determined as an error proceeding by rason of defendant's notice of appeal on questions of law from the judgment of the Court of Common Pleas of Franklin County, Ohio.

In the trial court G. Walter Lindenberg was also a defendant and the judgment of the trial court was against both defendants, but the error proceeding is prosecuted by Leo Lindenberg alone.

The following narrative facts in chronological order will render understandable the nature of the issues between the parties.

On November 9, 1909, the then owners of the fee in a five acre tract of land within the city limits, with a factory building constructed thereon. entered into a 99 year lease, renewable forever, with G. Walter Lindenberg and Leo Lindenberg, as lessees. The stipulated rental charge was $2000.00 per year, payable in quarterly installments. The lease also contained an option for purchase. The lease likewise contained a provision for forfeiture in the event of nonpayment of monthly rental.

In addition there was the provision that the lessee would pay all taxes. The present plaintiffs were not the owners of the fee in 1909, when the 99 year lease was executed, but through successive grants · to various individuals they became and are now the owners of the fee.

: On October 26, ·1911, the lessees,· G. Walter Lindenberg and Leo Lindenberg, executed a quit claim deed to the Columbus Brass. Company, conveying ,all· their interests in the . property included in· the lease, and such company has · ·een the holder of the ·estate at all times up· to ,and after. the commencement of .the..present..action. , ..,

The Columbus Brass Company did not assume or agree to perform the covenants of the lease, but, of course, took the premises subject to all the provisions of the lease, which included the payment of rentals, taxes, insurance, and so forth. The owners of the fee did not release the Lindenbergs from their liability under the 99 year lease.

The Columbus Brass Company paid all rental obligations until the quarterly installment due and payable February 1, 1933. At the time of the bringing of the action the default amounted to $5225.00, for which plaintiffs ask judgment, together with interest at 6% from the respective due dates.

Following the default in payment of rent, plaintiffs duly notified the defendant of such default, but no part of the amount has been paid.

After the commencement of the action in the trial court, the Columbus Brass Company was made a party defendant and a receiver appointed to liquidate its assets. For a time the business was operated as a going concern, but later sold together with the leasehold to a grantee wholly a stranger to the present litgation. The total amount paid to creditors was 10% of proven claims.

Leo Lindenberg filed answer and therein admitted practically all the allegations of the petition, and by way of second defense made the claim of eviction and novation. The prayer of the answer asks that plaintiffs' petition be dismissed; that the court decree a cancellation of the 99 year lease so far as defendant, Leo Lindenberg, is concerned; and that he may be decreed a full release and discharge from any and all payments, obligations, liabilities and covenants originally on his part to be paid and performed under and by virtue of said 99 year lease.

The cause was submitted to the trial court on an agreed statement of facts, and thereby the issues to be determined became issues of law.

The issues of eviction and novation arise under the following agreed state of facts:

On November 3, 1930, the council of the City of Columbus duly passed a resolution which was published in the · City Bulletin November 8, 1930, in substance declaring intention to appropriate property for alley purposes for the opening of an alley west of Michigan Avenue, from Dublin · Avenue to Broadbelt .Lane. .The resolution contained a detailed ·description. of the property. to be appropriated, and included a strip of ground 20 feet wide,· extending through the leasehold ,property in · the rear of the

factory building located thereon. The city served written notice on .ne plaintiffs and on the Columbus Brass Company of the city's intention to appropriate the premises· for alley purposes. .The only remaining step in order to make the appropriation effective was the determination of the value of the tract to be taken, together with damages to the remaining tract. Ordinarily this would mean the filing of a proceeding and the impanelling of a jury. Instead of submitting the question to a jury, the plaintiffs, Columbus Brass Company and the city agreed on the amount of $2000.00 as the consideration to be paid, following which the city council passed the necessary legislation appropriating the money and on receiving the deed from these plaintiffs and the Columbus Brass Company, the said sum of $2000.00 was paid to plaintiffs.

Leo Lindenberg was not notified of this proceeding and, according to the agreed statement of facts, he was not living in Columbus at the time, nor was his place of residence known. Following the opening up of the alley through the aforesaid proceedings, plaintiffs entered into a modification of the lease with the Columbus Brass Company by which the rental charge was reduced $100.00 per year and the option to purchase was reduced in the total sum of $2000.00.

It is the claim of defendant Leo Lindenberg that the execution of the deed of conveyance to the city by the plaintiffs constituted an eviction, and further that by the alteration of· the lease between the plaintiffs and the Columbus Brass Company through which ·the rental was reduced $100.00 per year and the option to purchase reduced $2000.00, there was brought about a novation.

The authorities in Ohio universally hold, and ·it is 'so· admitted by counsel for Leo Lindenberg, that consummated· condemnation proceedings do· not constitute an eviction.

ʼ Foote v Cincinnati, 11 O. 408; State v George, 34 Oh· St 657; Steifel v·Metz, 7 O. Dec. Rep., 30.

ʻ In other words, it is admitted by counsel for defendant that had plaintiffs permitted the appropriation proceedings to have taken the regular course of having the jury fix the amount of compensation and damages and the title vested in the city for alley purposes by court order, that defendant would have no defense to the present action ·so as the alley appropriation is concerned. · The claim is made that when the plaintiffs and the Columbus Brass Company executed their deed to the city, that this constituted a voluntary conveyance.· notwithstanding that the city had enacted all the necessary legislation up to the point of having the amount of compensation and damages ascertained.

· On the other hand, counsel for plaintiffs argue that the making of the deeds was not a voluntary conveyance, as that term is generally understood, but a mere agreement to values instead of leaving this question to a jury.

Further, that ·defendant Leo Lindenberg had no financial interest in the premises by reason of the fact that he had by quit claim deed conveyed away all such interest; that defendant had no legal right to notice, either from the city or the plaintiffs; that neither the plaintiffs nor the Columbus Brass Company had any desire to convey away this property for alley purposes, but were compelled to yield to the city's right of eminent domain; further, that no question is raised but what full value was paid for the property taken.

Counsel for plaintiffs in support of their position cite the following cases:

**Rosenberger v Hearsnip, 8 Abs 182,** holding ·that where a lease has been assigned, the assignee is the only one who can cancel the lease and surrender the premises, and that consent of the original lessee to such cancellation is not necessary.

Also **36 Corpus Juris, 273.**

·"Acts of public authorities that decrease the value and utility to the tenant of the demised premises, or utterly destroy them, do not amount to an eviction, even though the landlord has acquiesced therein."

"If the injury complained of results from an act done in the lawful exercise of the powers of the authorities, and in a proper manner, it is immaterial that it is done by the landlord himself under a statutory provision authorizing the owner of the premises to do the work.".

· Hitchcock v Bacon, 118 Pa, 272, wherein it is held that where a demised building is torn down by municipal authorities because of its dilapidated and dangerous condition in pursuance of a· municipal ordinance authorizing the removal of such building, acquiescence by the landlord without an effort to resist the action of the municipal authorities, will not make him liable to the tenant for eviction.

Goodyear Shoe· Machinery Company v Boston· Terminal Company, 176 Mass. 115, wherein it was held that the fact that it

was the lessor who exercised the power of eminent domain and condemned and took a portion of the premises, did not make it a breach of the covenant of quiet enjoyment.

Also in **Worthington v Hewes & McCann, 19 Oh St 66,** it was held that where a lease provided that at the end of fifteen years the demised premises should be appraised for the purpose of fixing the rentals for the following fifteen years succeeding, the original lessee who has assigned his lease had no right to interfere in the appointment of appraisers.

In this case it was held that the unconditional assignment by the lessee released him from liability for future rents.

However, in the case of **Taylor v DeBus, 31 Oh St 468,** the announcement in the Worthington case that the lessee by assignment was released from the payment of future rents was expressly overruled.

Also Boynton v Morgan, 22 Q. B. Div, 74, an English Court of Appeals made the announcement that the liability of the original lessee on the covenant to pay rent was not extinguished by the surrender of part of the demised premises by the lessee's assignee, but that he still remained liable.

Counsel for defendant cite and comment on the following cases:

Forbes v Collier, 2 Bull, 122, wherein the trial court determined that if a tenant loses the enjoyment of any part of a leased premises by some act of the landlord of a permanent character, done with the intention of depriving him of the enjoyment, it is an eviction.

Also citing Underhill on Landlord and Tenant, Section 670:

"The word (eviction) at the present time is commonly employed to denote an expulsion from the premises or any act by the landlord or his servants or by agents by which the tenant is permanently deprived of the use of the premises."

Also Crown Manufacturing Company v Gay, 13 Bull., 188, where it is held

"Eviction from part of the premises entitles tenant to a proportionate reduction of the rent where such eviction is by a stranger under the paramount title of the landlord; but eviction by the landlord not acquiesced in by tenant releases tenant from payment of all rent while so evicted."

Also **State v George, 34 Oh St, 657, page 670:**

"Where the tenant is evicted by the landlord from part of the premises, the entire rent is thereby suspended, for the landlord shall not so apportion his own wrong as to enforce the tenant to pay anything for the residue."

"An eviction of a tenant by the landlord relieves him from the payment of all rent which accrues subsequently during the term."

Also Underhill on Landlord and Tenant, Section 688.

"The ousting of a tenant from possession of all or a portion of the premises by the officers of the municipal government acting under a statute or ordinance, is not an eviction for the reason that it is an act for which the landlord is not responsible."

There is also cited the cases of Cincinnati v Mueller, 8 N. P., N. S., 195, and **Cincinnati v Smythe, 57 Oh Ap, 70.** Excerpts from the latter case in the first syllabus in its exact language might be supporting, but a reading of the entire case discloses that the court was dealing with the rights of assignees of lessees, and therefore it is not in point with the instant case.

Other cases cited are the following:
**Cullen v Bender, 122 Oh St, 82, page 92; 67 Oh St 264; 47 Oh St 217.**

We have examined all cases cited. Many of them are readily distinguishable from the instant case; none are directly in point. By analogy we find assistance through some of the citations.

The trial court determined that the execution of the deed by the plaintiffs and the Columbus Brass Company was not a voluntary action, and therefore would not constitute an eviction.

We are in accord with this conclusion. For the same reasons the subsequent reduction of rents and options of purchase would not constitute a novation.

There are several additional reasons why the opening of the alley through the premises and modification of lease so as to adjust rentals would not constitute a novation.

1. No question is raised as to the adequacy of the compensation and damages nor to the fairness of the reduction of rent or option to purchase.

2. No showing is made that the leasehold estate suffered any injurious effect from the location of the alley.

3. The defendant had no pecuniary interest in the premises for the reason that

he had by a quitclaim deed released all his interest to the Columbus Brass Company.

4. The eviction of the Columbus Brass Company for nonpayment of rent would not alone give right of possession to defendant.

5. After defendant was notified of nonpayment of rent, he did not place himself in position of having any legal or equitable rights in the premises by paying up the defaulted installments.

6. No showing was made that defendant desired or attempted to repossess himself of the leased premises.

7. As a condition precedent to bringing any proceedings to repossess himself of the leased premises, all defaulted installments of rent must have been paid by him.

8. Even after the payment of defaulted installments there still would have existed the quitclaim deed which he executed to the Columbus Brass Company, which could only be removed as a cloud on the title through some equitable action. This is true because the Columbus Brass Company did not covenant to pay the rents, but were only obligated so to do by reason of the covenants in the original 99 year lease.

9. The adjustment of the rent and option to purchase being reduced, no injury or damage is shown to defendant, but, on the other hand, his contingent liability was diminished.

In the trial court there was presented a second question as follows:

As a result of the conveyance to the city, a narrow strip of ground approximately 39 feet wide and 553 feet deep, was left along the east side of the leased premises. This strip was separated from the remainder of the premises by the new alley and was useless to the leasehold in connection with the larger portion of the leased premises.

With the consent of the Columbus Brass Company, the then holder of the lessee's interest, these plaintiffs and the Columbus Brass Company on November 26, 1935 conveyed said 39 ft. strip along the east side of the leased property to an adjoining property owner, the Jaeger Machine Company, for a consideration of $2500.00. On the same date the plaintiffs and the Columbus Brass Company executed an amendment to the lease. On the same day an adjustment of the rent and option to purchase was made between the plaintiffs' and the Columbus Brass Company. This transaction was subsequent in date to the last installment of rent for which plaintiffs seek recovery in their petition.

Defendant in his answer claims plaintiffs'

transaction constituted an eviction and a novation.

Upon this issue the court held with the defendant, and plaintiffs not prosecuting an appeal, we are not called upon to determine this question.

The judgment of the trial court will be affirmed and cause remanded for further proceedings according to law. Plaintiffs will recover their costs.

HORNBECK, PJ, & GEIGER, J, concur.